

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

November 7, 1974

The Honorable Gerald W. Schmidt
County Attorney
Gillespie County Courthouse
Fredericksburg, Texas 78624

Opinion No. H-445

Re: Financing of addition to
hospital conveyed to county
and leased back to original
owners.

Dear Mr. Schmidt:

You have requested our opinion as to the propriety of a proposed transaction whereby Gillespie County will acquire ownership of an existing hospital, will finance rather extensive improvements and then will lease the hospital back to its present owners.

The hospital was erected and equipped at a cost of approximately $1,600,000 dollars. There is an existing lien against the property to secure a loan of $300,000 included in the original cost. The present owner is Hill County Memorial Hospital, organized under the Texas Non-Profit Corporation Act, Article 1396, V.T.C.S.

The rapid growth in the Gillespie County-Fredericksburg area indicates the need to increase the size of the hospital at an estimated cost of $650,000. You state that the only feasible way to raise the necessary funds would be a county-wide bond issue. For this reason it is planned to convey the hospital to the County of Gillespie and for the County then to finance the improvements through a bond issue. After the improvements have been financed, the hospital would be leased to Hill County Memorial Hospital for a period of 99 years.

We have had numerous occasions to review the powers and duties of a county acting through its commissioners court. Generally, it is held that the powers of counties are those "specifically conferred upon them." Canales v. Laughlin, 214 S.W.2d 451, 453 (Tex. Sup. 1948)

p. 2050

Anderson v. Wood, 152 S. W. 2d 1084 (Tex. Sup. 1941);  Attorney General Opinions H-392 (1974); H-374 (1974); H-51 (1973); H-45 (1973); H-16 (1973).

Article 4478, V. T. C. S. , amended in 1973 (Acts 1973, 63rd Leg. , ch. 502, p. 1332), gives the counties such broad powers over hospitals that, in our opinion, there is ample authority "conferred" upon Gillespie County to carry out the proposed transaction.  Article 4478 provides:

> The commissioners court of any county shall have power to establish a county hospital and any medical or other health facilities and to enlarge any existing hospitals or facilities for the care and treatment of persons suffering from any illness, disease or injury, subject to the provisions of this chapter.  At intervals of not less than twelve months, ten percent of the qualified property tax paying voters of a county may petition such court to provide for the establishing or enlarging of a county hospital, or any medical or other health facilities, in which event said court within the time designated in such petition shall submit to such voters at a special or regular election the proposition of issuing bonds in such aggregate amount as may be designated in said petition for the establishing or enlarging of such hospital or facilities.  Whenever any such proposition shall receive a majority of the votes of the qualified property tax payers voting at such election, said commissioners court shall establish and maintain such hospital or facilities and shall have the following powers:
>
> 1. To purchase and lease real property therefor, or acquire such real property, and easements therein, by condemnation proceedings.
>
> 2. To purchase or erect all necessary buildings,

make all necessary improvements and repairs and
alter any existing buildings, for the use of said
hospital or facilities. The plans for such erection,
alteration, or repair shall first be approved by
the State Health Officer, if his approval is requested
by the said commissioners court.

3. To cause to be assessed, levied and collected,
such taxes upon the real and personal property owned
in the county as it shall deem necessary to provide
the funds for the maintenance thereof, and for all
other necessary expenditures therefor.

4. To issue county bonds to provide funds for the
establishing, enlarging and equipping of said hospi-
tal or facilities and for all other necessary permanent
improvements in connection therewith; to do all other
things that may be required by law in order to render
said bonds valid.

5. To appoint a board of managers for said hospital
or facilities, or both.

6. To accept and hold in trust for the county, any
grant or devise of land, or any gift or bequest of
money or other personal property or any donation to
be applied, principal or income or both, for the benefit
of said hospital or facilities, and apply the same in
accordance with the terms of the gift.

7. The commissioners court may lease all or part
of any medical facility so constructed, purchased or
acquired under this Act.

See also V. T. C. S.  art. 4494l.

However, there is another limitation on the authority of commissioners courts, i.e., the prohibition of Article 3, section 52 of the Texas Constitution that the Legislature may not authorize any county to lend its credit or to grant public money or anything of value in aid of or to any individual, association or corporation.

In construing this provision along with sections 50 and 51 of Article 3 and section 3 of Article 8, the courts have developed the rule that an expenditure of public funds, even if it benefits a private person, association or corporation, may nevertheless be upheld if it serves a proper public purpose. See, e.g., Attorney General Opinion H-403 (1974) and the cases cited therein.

You have not told us whether any consideration will be paid by the county for the conveyance of the hospital to it and, if so, how much. You have not indicated what disposition is to be made of the obligation of $300,000 secured by a lien on the hospital. Finally, you have not told us what rental will be paid to the county and the relationship it will bear to the financial obligation to be assumed by the county. All of these are facts pertinent to the decision as to whether the proposed expenditure would be for a proper public purpose.

The construction and maintenance of hospitals has been held to constitute a public purpose, and bonds issued to finance construction of county-owned hospitals are therefore valid under Article 3, section 52. Seydler v. Border, 115 S.W.2d 702, 703 (Tex. Civ. App.--Galveston 1938, writ ref'd). However, the constitutional prohibitions against lending of credit and donation of public money also impose upon a county that leases its facilities the duty to obtain both sufficient assurance that the public purpose will be accomplished by the lessee and an adequate rental. Gillham v. City of Dallas, 207 S.W.2d 978 (Tex. Civ. App.--Dallas 1948, writ ref'd n.r.e.); Dodson v. Marshall, 118 S.W.2d 621 (Tex. Civ. App.--Waco 1938, writ dis'm.).

Articles 4478 and 44941 give counties the power to lease their hospital facilities, but the authority granted by these statutes must be conditioned upon compliance with the constitutional provisions. In

Gillham, the city sought to issue bonds to finance the building of refrigeration and cold storage facilities for preservation and conservation of perishable foods to be used in connection with a public  market.   After finding that the proposed use constituted a public purpose, the court indicated that the city was obligated to ensure that the facilities would be used for the contemplated purpose:

> So long as the City authorities supervise and control the contemplated buildings and the business conducted therein, and such buildings and use thereof serve some public market purpose . . . the statutes do not exclude the erection of such buildings by the expenditure of bond funds.   207 S. W. 2d at 983.

Similarly, in Dodson, the court sanctioned the leasing of a portion of a courthouse rotunda for use as a concession stand, noting that adequate control over the use of the space was reserved by the commissioners court because the lease was terminable at will.

Since the proposed lease of the hospital in question is for ninety-nine years, the county should make some provision to retain some degree of control over future use of the facility.  For example, the lease could require that one or more directors of the hospital corporation be appointed by the commissioners court, it could spell out in detail the obligations of the hospital toward indigent patients, or it could contain other provisions insuring county authority.

Moreover, the county must receive an adequate rental for the facility.  If the county fails to receive adequate consideration for the transaction, it will have effectively made an unconstitutional "donation" to a private entity.  Dodson v. Marshall, supra, at 624;  Llano County v. Knowles, 29 S. W. 549 (Tex.  Civ.  App. 1895, no writ).  The Attorney General is not in a position to assess all of the circumstances that must be considered in determining whether the rental is satisfactory.  Such factors as the value to the county of the facilities and the value of being relieved of the responsibility of hospital operation must be assessed by the commissioners court in light of its constitutional obligation.

### SUMMARY

A county may issue bonds to finance additions
to a hospital and may lease the hospital to a
private non-profit corporation if there is sufficient
assurance that the facility will be used only for county
hospital purposes, and if the county receives an
adequate rental.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee

lg