

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 11, 1991

Honorable Carmen Rivera-Worley
Val Verde County Attorney
207 East Losoya
Del Rio, Texas 78840

Opinion No. DM-66

Re: Whether a hospital district may construct a building to lease to a private physician and whether it may use excess monies in its interest and sinking fund account to finance construction of the building (RQ-122)

Dear Ms. Rivera-Worley:

You have requested our opinion regarding whether the Val Verde Hospital District (hereinafter the "hospital district") may construct a building to lease to a private physician. You have informed us that the hospital district currently leases a portion of its physical plant at Val Verde Memorial Hospital (hereinafter the "hospital") to private physicians who operate the Angelo Dialysis Center, Inc. The private dialysis center provides renal care for patients of the hospital. The dialysis clinic currently needs to expand its facilities, and there is no additional space available at the hospital. The hospital district has agreed to build a separate structure on the hospital grounds which it intends to lease to the dialysis clinic for a period of ten years. The dialysis clinic would make monthly lease payments for the use of the building. The hospital district also proposes to use excess funds from its Interest and Sinking Fund Account to pay for the construction of the building.

With respect to the hospital district's plans, you ask the following:

> (1) whether the hospital district may construct a building on the hospital grounds owned by the hospital district to lease to a private physician for the purpose of providing dialysis services; and

> (2) whether the hospital district may use the excess funds in its Interest and Sinking Fund Account to finance the construction of the building.

Generally, a special-purpose district, such as a hospital district, may "exercise only such powers as have been expressly delegated to it by the Legislature, or which exist by clear and unquestioned implication." *Tri-City Fresh Water Supply Dist. No. 2 of Harris County v. Mann*, 142 S.W.2d 945, 946 (Tex. 1940). Implied powers are those that are "indispensable to . . . the accomplishment of the purposes of [the district's] creation." *Id.* at 947; *see also* Attorney General Opinion JM-258 (1984). With these principles in mind, we first consider whether the hospital district may construct the building to lease to a private physician for the purpose of providing dialysis services.

The hospital district is a county-wide hospital district created by a special law of the 64th Legislature, under the authority of article IX, section 9, of the Texas Constitution. *See* Acts 1975, 64th Leg., ch. 658, at 1977.[1] Article IX, section 9, of the Texas Constitution does not expressly authorize the hospital district to construct a building to lease to a private physician. *See* Attorney General Opinion JM-258. The hospital district's enabling statute, however, confers upon the hospital district the express authority to construct buildings on its premises: "[T]he district shall provide for the establishment of a hospital system by the purchase, construction, acquisition, repair, or renovation of buildings and equipment . . . ." Acts 1975, 64th Leg., ch. 658, § 2, at 1977. In addition, section 10 of the enabling statute provides in part as follows:

> The district, through its board of directors, is authorized to enter into an operating or management contract with regard to its facilities or a part thereof, or *may lease all or part of its buildings and facilities upon terms and conditions considered to be to the best interest of its inhabitants*, provided that in no event shall any lease be for a period in excess of 25 years from the date entered.

*Id.* § 10, at 1982 (emphasis added).[2] We conclude that the foregoing provision expressly authorizes the hospital district to lease a building on its premises to any person or entity, including a private physician, provided that the board of directors

---

[1]Certain sections of the hospital district's enabling statute were amended in 1983. Acts 1983, 68th Leg., ch. 1087, at 5708.

[2]*See also* Health & Safety Code § 285.051(a).

determines that the terms and conditions of the lease are in the best interests of the inhabitants of the hospital district.

The determination that the hospital district has the express authority to lease a hospital building is not the end of our analysis, however. We must also consider whether the hospital district's plan would serve a "hospital purpose" consistent with the requirements of article IX, section 9, which charges the hospital district with the purpose of providing medical care, particularly medical care for the needy, and article III, sections 51 and 52, which generally prohibit the use of public funds for private purposes. *See Sullivan v. Andrews County*, 517 S.W.2d 410 (Tex. Civ. App.-- El Paso 1974, writ ref'd n.r.e.); Attorney General Opinions JM-258; H-966 (1977); H-16 (1973); M-912 (1971); M-256 (1968).[3] In Attorney General Opinion M-912, this office concluded that a hospital district could contract with a private hospital for laboratory services. By contrast, in Attorney General Opinion JM-258, this office considered whether it was permissible for the Titus County Hospital District to lease office space to private physicians. This office concluded that "[w]hereas laboratory testing is a hospital function, offices for the private practice of medicine are not 'hospital purposes' or the provision of 'medical or hospital care for the needy.'" Attorney General Opinion JM-258 at 3.

You have informed us that the dialysis clinic which will lease the building is able to provide renal services to patients at a lesser cost than the hospital district, and that the dialysis clinic will serve primarily Medicare and Medicaid patients. You further state that it is important to patients that the dialysis clinic be located within walking distance of the hospital and that there is no suitable site near the hospital that the dialysis clinic might purchase to build a facility. Furthermore, the information you submitted to this office suggests that the hospital district will receive an adequate *quid pro quo* for the lease. Under these circumstances, we conclude that the construction and leasing of a building for the purpose of providing cost-effective dialysis services adjacent to the hospital would serve a "hospital purpose." Because the hospital district has express authority to construct buildings and to lease all or part of its buildings and because leasing a building to a dialysis clinic for the purpose of providing renal services adjacent to the hospital would

---

[3]You state that Attorney General Opinion JM-258 is distinguishable because the hospital district's enabling statute confers the express power to lease its property, suggesting that since the hospital district has express authority, we need not consider whether leasing a hospital building to a dialysis clinic serves a "hospital purpose." The enabling statute, however, must be read in light of relevant constitutional provisions. Acts 1975, 64th Leg., ch. 658, § 23, at 1985.

serve a "hospital purpose," we conclude that the hospital district's plan to build and lease the facility is permissible.[4]

Next, we consider whether the hospital district may use the excess monies in its Interest and Sinking Fund Account to finance the construction of the building. You state that the hospital district's bond indebtedness will be retired in January 2002. You estimate that approximately $638,000.00 will be required to pay the principal and interest due on the bond indebtedness in 1991 and 1992, and that the current balance of the Interest and Sinking Fund Account is approximately $938,800.00. You inform us that the hospital district would like to withdraw a portion of these excess monies to construct the building. Despite this surplus in the account, however, we conclude that the hospital district does not have the authority to finance the construction of the building in this manner.

In *Bexar County Hosp. Dist. v. Crosby*, 327 S.W.2d 445, 448 (Tex. 1959), addressing a similar sinking fund, the Texas Supreme Court stated that a hospital district holds "in trust for the bondholders taxes levied specifically to retire certain bonded indebtedness." The district cannot apply those funds to any purpose "except the retirement of that bonded indebtedness." *Id.* (citations omitted). Relying on *Bexar County Hospital District*, this office has determined that absent specific statutory authority to the contrary, monies in an interest and sinking fund may be used for no other purpose than the one for which it was created. Attorney General Opinion JM-142 (1984) at 2; *see also* Attorney General Opinions H-1254 (1978); M-841 (1971); V-157 (1947).[5]

Section 8 of the enabling statute authorizes the hospital district to create an Interest and Sinking Fund Account "to pay the interest on and principal of said bonds as same mature . . . ." Acts 1975, 64th Leg., ch. 658, § 8, at 1981. Neither article IX, section 9, of the Texas Constitution nor other provisions in the enabling statute confer upon the hospital district the express power to use monies in its Interest and Sinking Fund Account to finance construction of a building. In

---

[4]You do not ask, and we do not address, whether the lease must be obtained through competitive bidding.

[5]Although these authorities clearly hold that excess monies may not be diverted from an interest and sinking fund account prior to the retirement of the bond indebtedness, we note that there has been some controversy regarding the proper disposition of surplus interest and sinking fund account monies following the retirement of the bond indebtedness. *See* Attorney General Opinion JM-142 (overruling Attorney General Opinion MW-97 (1979)).

contending that the hospital district has the authority to use excess monies in the Interest and Sinking Fund Account for other purposes, you rely on the following language in section 11 of the enabling statute:

> [T]he district may incur no obligation payable from any revenues of the district, taxes or otherwise, except those on hand or to be on hand within the then current and following fiscal year of the district.

*Id.* § 11.[6]   Section 11, read as a whole, however, merely establishes general limitations on the purchases and expenditures of the hospital district. It does not give the hospital district the express authority to use funds in the Interest and Sinking Fund Account for the purpose of constructing a building. Nor does article 752a, V.T.C.S., the other statutory provision cited in your request, grant such authority. That provision, which has been repealed,[7] dealt solely with interest and sinking funds for public road bonds.

You also contend that because the bonds were originally issued to fund the construction and acquisition of hospital buildings, it would be appropriate to use the excess monies in the Interest and Sinking Fund Account to finance the construction of the proposed building. We disagree. The Interest and Sinking Fund Account consists of taxes collected to pay the bond indebtedness. It does not consist of bond revenues. Under *Bexar County Hospital District*, the hospital district holds the Interest and Sinking Fund Account in trust for the bondholders and cannot apply those funds to any purpose except the retirement of the bond indebtedness, without specific statutory authority. You have pointed to no specific statute authorizing the hospital district to use the excess monies in its Interest and Sinking Fund Account for any purpose other than to pay interest and principal on the bond indebtedness. In the absence of such specific statutory authority, we must conclude that the hospital district may not use excess monies in the Interest and Sinking Fund Account to finance construction of the building.

---

[6]Section 11 was amended in 1983. *See* Acts 1983, 68th Leg., ch. 1087, § 2, at 5710. The amendments are not significant to our analysis.

[7]*See* Acts 1983, 68th Leg., ch. 288, § 2, at 1526.

## SUMMARY

The Val Verde Hospital District has express authority pursuant to its enabling statute to construct buildings and to lease all or part of its buildings. Leasing of a hospital district building to a dialysis clinic for the purpose of providing cost-effective renal services adjacent to the Val Verde Memorial Hospital would serve a "hospital purpose." Under these circumstances, the hospital district is authorized to construct the proposed facility to lease to a private physician. The hospital district is not authorized to use excess monies in its Interest and Sinking Fund Account to finance construction of the building.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General