

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

October 10, 2016

The Honorable Billy W. Byrd
Upshur County Criminal District Attorney
405 North Titus Street
Gilmer, Texas 75644

Opinion No. KP-0116

Re: Whether a county commissioners court has authority to expend county funds on holiday decorations and county literacy programs (RQ-0105-KP)

Dear Mr. Byrd:

You ask two questions about the county commissioners court's authority to expend county funds on holiday decorations and county literacy programs.[1] You first ask whether Texas Local Government Code section 381.004 or any other statute authorizes a commissioners court "to expend county funds to place holiday lighting and decorations in and on county buildings and facilities." Request Letter at 1.

Commissioners courts have only those powers expressly granted by the constitution or by statute and those necessarily implied. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 28 (Tex. 2003). A commissioners court acts as the county's legislative body and is responsible for budget-making and allocating county funds for county purposes. *See* TEX. CONST. art. V, § 18(b) (granting a commissioners court "such powers and jurisdiction over all county business, as is conferred by this Constitution" or by statute); Tex. Att'y Gen. Op. No. GA-0857 (2011) at 2. While a commissioners court has "broad discretion in conducting county business, the legal basis for any action taken must be grounded ultimately in the constitution or statutes." *Guynes v. Galveston Cty.*, 861 S.W.2d 861, 863 (Tex. 1993).

A commissioners court's responsibilities include providing, equipping, and maintaining the county courthouse and buildings. TEX. LOC. GOV'T CODE § 291.001; *see also Dodson v. Marshall*, 118 S.W.2d 621, 623 (Tex. Civ. App.—Waco 1938, writ dism'd) ("The duty to provide a courthouse includes the obligation to furnish same with suitable and necessary equipment."); Tex. Att'y Gen. Op. No. GA-1018 (2013) at 2 (determining that the commissioners court's authority to provide for a courthouse implies authority to reasonably regulate its use). No statute specifically addresses county expenditures for holiday lighting and decorations on county buildings. You reference section 381.004 of the Local Government Code, which provides in part:

---

[1]*See* Letter from Honorable Billy W. Byrd, Upshur Cty. Crim. Dist. Att'y, to Office of the Tex. Att'y Gen. at 1 (Apr. 6, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

> (b) To stimulate business and commercial activity in a county, the commissioners court of the county may develop and administer a program:
>
> (1) for state or local economic development;
>
> (2) for small or disadvantaged business development;
>
> (3) to stimulate, encourage, and develop business location and commercial activity in the county;
>
> (4) to promote or advertise the county and its vicinity or conduct a solicitation program to attract conventions, visitors, and businesses;
>
> (5) to improve the extent to which women and minority businesses are awarded county contracts;
>
> (6) to support comprehensive literacy programs for the benefit of county residents; or
>
> (7) for the encouragement, promotion, improvement, and application of the arts.

TEX. LOC. GOV'T CODE § 381.004(b). Subsection (c) authorizes a commissioners court to "contract with another entity for the administration of the program; . . . use county employees or funds for the program; and . . . accept contributions, gifts, or other resources to develop and administer the program." *Id.* § 381.004(c). Thus, section 381.004(c) specifically authorizes a commissioners court to expend county funds for a program that serves a purpose listed in subsection (b). Whether placing holiday lighting and decorations in and on county buildings serves one or more of these purposes will depend on the particular facts and therefore cannot be resolved in an attorney general opinion. *See* Tex. Att'y Gen. Op. No. KP-0091 (2015) at 2 (stating that "[f]act finding is beyond the scope of an attorney general opinion").[2] Rather, under section 381.004, the commissioners court must determine in the first instance, subject to judicial review,

---

[2] A 1940 attorney general opinion answered negatively the question of whether a commissioners court "may legally expend county funds to match or augment funds raised by the local Chamber of Commerce or the retail merchants of Tyler to provide light fixtures necessary to decorate the Court House lawn during the Christmas season." Tex. Att'y Gen. Op. No. O-2928 (1940) at 1–2. The opinion determined that such an expenditure was illegal, not because any law prohibited it, but because the attorney general was unable to locate statutory or constitutional authority that "clearly authorized" a commissioners court to make the expenditure. *Id.* at 2. Thus, the opinion does not provide guidance for determining a commissioners court's authority under section 381.004 of the Local Government Code, which was first enacted in 1989. *See* Act of May 28, 1989, 71st Leg., R.S., ch. 1060, § 3, 1989 Tex. Gen. Laws 4305, 4307, *amended by* Act of June 1, 1997, 75th Leg., R.S., ch. 1037, § 3, 1997 Tex. Gen. Laws 3875, 3877; Act of May 8, 2001, 77th Leg., R.S., ch. 254, § 1, 2001 Tex. Gen. Laws 491, 491; Act of May 25, 2001, 75th Leg., R.S., ch. 1154, § 1, 2001 Tex. Gen. Laws 2560, 2560; Act of May 20, 2003, 78th Leg., R.S., ch. 1275, § 2(109), 2003 Tex. Gen. Laws 4140, 4146; Act of May 29, 2015, 84th Leg., R.S., ch. 1236, § 12.003, 2015 Tex. Gen. Laws 4096, 4135 (codified at TEX. LOC. GOV'T CODE § 381.004).

whether a particular program serves a purpose authorized by the statute. *See* TEX. LOC. GOV'T CODE § 381.004(b).

In considering whether to expend funds for holiday lights and decorations, if the decorations include a religious aspect, the commissioners court should further consider whether the particular display complies with the United States Supreme Court's Establishment Clause jurisprudence. *See* U.S. CONST. amend. 1. A holiday display containing a religious aspect may raise constitutional issues when placed on public property or funded with public funds. *See Skoros v. City of New York*, 437 F.3d 1, 3 (2d Cir. 2006) ("No holiday season is complete, at least for the courts, without one or more First Amendment challenges to public holiday displays."). Two Supreme Court cases provide Establishment Clause standards specifically concerning holiday displays and are informed by the Court's latest Establishment Clause case from last term. *See generally Cty. of Allegheny v. Am. Civil Liberties Union*, 492 U.S. 573, 593–94 (1989), *abrogated on other grounds by Town of Greece v. Galloway*, 134 S. Ct. 1811, 1821 (2014); *Lynch v. Donnelly*, 465 U.S. 668, 672–78 (1984).

In *Lynch*, the Court considered a display on private property located in a city's shopping district. 465 U.S. at 671. The display consisted of city-owned "decorations traditionally associated with Christmas, including, among other things, a Santa Claus house, reindeer pulling Santa's sleigh, candy-striped poles, a Christmas tree, carolers, cutout figures representing such characters as a clown, an elephant, and a teddy bear, hundreds of colored lights, [and] a large banner that reads 'SEASONS GREETINGS,'" as well as a nativity scene that had been part of the display for 40 or more years. *Id.* Considering the display as a whole and the city's actual motives for including the religious element, the Court upheld the display because celebrating the Christmas season had a legitimate secular purpose and did not have a primary effect of advancing religion. *Id.* at 681–85.[3] The concurring opinion by Justice O'Connor provided a "clarification of . . . Establishment Clause doctrine," analyzing the display using an endorsement test, focusing on "institutional entanglement and on endorsement or disapproval of religion." *Id.* at 687–89 (O'Connor, J., concurring). Such an inquiry requires that "[e]very government practice must be judged in its unique circumstances to determine whether it constitutes an endorsement or disapproval of religion." *Id.* at 694.

In *County of Allegheny*, the Supreme Court upheld a display of a menorah placed near a Christmas tree outside of a county building, but held that a crèche located in the main part of the courthouse violated the Establishment Clause. *Cty. of Allegheny*, 492 U.S. at 579, 601–02, 620–21. In examining the effect of a display in context, the endorsement inquiry asks whether a reasonable, informed person would conclude that the government action was endorsing religion. *Id.* at 630–34 (O'Connor, J., concurring); *see also McCreary Cty. v. ACLU of Ky.*, 545 U.S. 844,

---

[3]The Court analyzed the inclusion of the crèche utilizing the three-part test in *Lemon v. Kurtzman*, requiring the government's action to (1) have a secular purpose, (2) have a primary effect that neither advances nor inhibits religion, and (3) not foster an excessive entanglement between government and religion. *Lynch*, 465 U.S. at 679–85 (citing *Lemon v. Kurtzman*, 403 U.S. 602 (1971)). In another recent opinion regarding the Establishment Clause, we highlighted some of the difficulty the Court has had in determining whether to continue to use the *Lemon* test. *See* Tex. Att'y Gen. Op. No. KP-0109 (2016) at 4 n.4. While the test has seen more use with regard to displays than prayer, the continued viability of the test remains in doubt.

866 (2005). The central guiding principle from *Lynch* and *Allegheny* is whether any religious component in a holiday display or decorations "has the effect of endorsing religious beliefs, and the effect of the government's use of religious symbolism depends upon its context." *Cty. of Allegheny*, 492 U.S. at 597. Thus, a county is not prohibited from sponsoring a display that "is essentially like those to be found in hundreds of towns or cities across the Nation—often on public grounds—during the Christmas season," *Lynch*, 465 U.S. at 671, provided that, when viewed in context, the display as a whole has a secular purpose, does not have a primary effect of endorsing religion, and does not foster an excessive entanglement with religion.

Finally, the Supreme Court's most recent assessment under the Establishment Clause was last term in *Galloway*, 134 S. Ct. 1811. *County of Allegheny* had dicta responding to a criticism of the dissent indicating that legislative prayer in a previous case was permissible because the chaplain had "'removed all references to Christ.'" *Galloway*, 134 S. Ct. at 1821 (quoting *Allegheny*, 492 U.S. at 603). The Court clarified that the Establishment Clause did not demand nonsectarian prayer.[4] Ultimately, the Court upheld a sectarian prayer that opened a city council meeting because it was sufficiently rooted in history and noncoercive as to comply with the Establishment Clause. *Id.* at 1824–28. The Court's analysis is a demonstration that it is trending away from the *Lemon v. Kurtzman* test and toward an assessment of history and coercion.

Applying either the *Lemon* test from *Lynch* or the history and coercion analysis from *Galloway*, a court would likely conclude the holiday lights and decorations you ask about would not violate the Establishment Clause. The *Lemon* test assesses purpose, effect, and entanglement. *Lynch*, 465 U.S. at 679–85. Holiday lights and decorations posed no Establishment Clause problem for the Court in *Lynch* when it was applying the *Lemon* test, and there is no reason to believe they would pose an Establishment Clause problem here. *Id.* at 671. And under the analysis of *Galloway*, the historical, secular use of holiday lights and decorations and the fact that they are passive and not coercive further indicate that a Court would likely conclude that they do not violate the Establishment Clause.

You also ask whether a commissioners court is authorized under Texas Local Government Code section 381.004 or any other statute, "to expend county funds in order to contract with or donate to a local county literacy program in order to provide literacy programs for the benefit of county residents[.]" Request Letter at 1. Section 381.004 expressly authorizes a commissioners court to contract for or to pay county funds for a program to "support comprehensive literacy programs for the benefit of county residents." TEX. LOC. GOV'T CODE § 381.004(b)(6), (c)(1), (3).

Even if statutorily authorized, however, an expenditure of county funds is subject to the constitutional prohibition against gratuitous donations of public funds to other entities. *See* TEX. CONST. art. III, § 52(a) (prohibiting the Legislature from authorizing counties, cities, or other political subdivisions to grant money to private entities); *Tex. Mun. League Intergov'tl Risk Pool*

---

[4]*Galloway*, 134 S. Ct. 1821–22 ("Nor did the Court imply the rule that prayer violates the Establishment Clause any time it is given in the name of a figure deified by only one faith or creed. To the contrary, the Court instructed that the content of the prayer is not of concern to judges, provided there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief." (citation and quotation marks omitted)).

*v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 383 (Tex. 2002) (explaining that article III, section 52(a) prohibits gratuitous payment of public money). While section 381.004 contemplates payments to or contracts with a noncounty entity, a county may constitutionally expend public funds to directly accomplish a legitimate public purpose even though the expenditure incidentally benefits a private interest. *See Brazos River Auth. v. Carr*, 405 S.W.2d 689, 693–94 (Tex. 1966). The Texas Supreme Court enumerated a three-part test in *Texas Municipal League* that determines whether an expenditure serves a public purpose, requiring that the political subdivision making the expenditure (1) ensure that the expenditure's

> predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return benefit.

*Tex. Mun. League*, 74 S.W.3d at 384. The commissioners court must determine in the first instance, subject to judicial review, whether an expenditure, be it for holiday lights and decorations or for county literacy programs, meets these constitutional requirements. *See* Tex. Att'y Gen. Op. No. KP-0007 (2015) at 2 (stating that the determination of whether a county expenditure is constitutional must be made initially by the commissioners court, subject to judicial review).

## S U M M A R Y

Under section 381.004 of the Local Government Code, a commissioners court may expend county funds on holiday lights and decorations on county buildings and facilities, and may expend county funds to contract with or donate to a local county literacy program, to the extent that such expenditures serve purposes specified in the statute. Whether a particular expenditure serves a purpose specified in section 381.004 and meets the requirements of article III, section 52(a) of the Texas Constitution is for the commissioners court to determine in the first instance, subject to judicial review. A court would likely conclude that such a holiday light display is not a violation of the Establishment Clause.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

WILLIAM A. HILL
Assistant Attorney General, Opinion Committee